IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

RODERICK O. MASHBURN,
      Petitioner,

vs.                           Case No.:  4:12cv289/RS/EMT

SECRETARY, DEPARTMENT
OF CORRECTIONS,
      Respondent.
_____/

**REPORT AND RECOMMENDATION**

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (doc. 12).  Petitioner filed a reply (doc. 13).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 12).[1]  Petitioner was charged in the Circuit Court in and for Leon County,

_____

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 13).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Florida, Case No. 2006-CF-4615, with one count of burglary of a dwelling (Ex. C at 1).  A jury found him guilty as charged (Ex. C at 47, Exs. D, E).  The court adjudicated Petitioner guilty and sentenced him as a prison releasee reoffender to fifteen years in prison, with pre-sentence credit of 43 days (Ex. A at 52–60).  Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D08-155 (Ex. G).  On July 16, 2009, the First DCA affirmed the judgment per curiam without written opinion (Ex. I).  Mashburn v. State, 12 So. 3d 755 (Fla. 1st DCA 2009) (Table). The mandate issued November 18, 2009 (Ex. J).

On October 20, 2009, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. K).  He subsequently filed a motion to voluntarily dismiss (Ex. L), which the state court granted on January 20, 2010 (Ex. M).

On November 10, 2009, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D09-5767, alleging ineffective assistance of appellate counsel (Ex. U).  The First DCA denied the petition on December 23, 2009 (Ex. V).  Mashburn v. State, 25 So. 3d 622 (Fla. 1st DCA 2009) (Mem).

On June 4, 2010, Petitioner filed another Rule 3.850 motion (Ex. O at 1–11).  The state circuit court summarily denied the motion in an order rendered December 14, 2011 (id. at 106–10).  Petitioner appealed the decision to the First DCA, Case No. 1D12-51 (Ex. P).  The First DCA affirmed the decision per curiam without written opinion on April 10, 2012, with the mandate issuing June 11, 2012 (Exs. R, S).  Mashburn v. State, 93 So. 3d 1018 (Fla. 1st DCA 2012) (Table).

Petitioner filed the instant federal habeas action on June 12, 2012 (doc. 1).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on

---

[2] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim. Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed.

2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, *supra* at 1291–92.  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011); *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see, e.g.,* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").   The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See* Gill, 633 F.3d at 1292.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

III.   EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, *see* 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S.

at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 & n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's

claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[3]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Id., 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . .  We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[4]

---

[3] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

[4] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient

The Eleventh Circuit, prior to <u>Duncan</u>, had broadly interpreted the "fair presentation" requirement.  After <u>Duncan</u>, however, the Eleventh Circuit has taken a more narrow approach.  For example, in <u>Zeigler v. Crosby</u>, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* <u>O'Sullivan</u>, 526 U.S. at 839–40, 848; <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* <u>Coleman v. Thompson</u>, 501 U.S. 722, 734–35 & n.1, 111 S. Ct. 2546, 2555 & n.1, 115 L. Ed. 2d 640 (1991); <u>Caniff v. Moore</u>, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); <u>Chambers v. Thompson</u>, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* <u>Tower v. Phillips</u>, 7 F.3d 206, 210 (11th Cir. 1993); <u>Parker v. Dugger</u>, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112

---

to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[5]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate. *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991)

---

[5] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

(quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

Id.  Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a petitioner's proof of innocence.  See McQuiggin v. Perkins, — U.S. —, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013).  As the Court stated in Schlup, "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]."  513 U.S. at 332; see also House, 547 U.S. at 537.

Within this framework, the court will review Petitioner's claims.

IV.   PETITIONER'S CLAIMS

A.   Ground One:  "Ineffective assistance of counsel for failing to object to jury instruction on stealth entry in violation of U.S.C.A. Const. Amend. 6 and 14th Amend."

Petitioner alleges:

> Counsel failed to object to jury instruction where the State clearly failed to prove the element of stealthiness as required by F.S. 810.07. The evidence failed to show Petitioner's entry was done in a surreptitious, furtive, sly or clandestine manner.  Evidence did show Petitioner was under medical duress when he entered.

(doc. 1 at 6).[6]  He asserts he presented this claim in his Rule 3.850 motion (id.).

---

[6] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned in their pleadings.

Respondent contends the state court's adjudication of this claim was not an unreasonable application of Supreme Court precedent (doc. 12 at 7–12).

1.  Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms."  Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do."  Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so.  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ."  Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict

the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting <u>Putman v. Head</u>, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high. *See* <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting <u>Strickland</u>, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. <u>Strickland</u>, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in <u>Strickland</u> for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. <u>Williams v. Taylor</u>, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. <u>Strickland</u>, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. <u>Strickland</u>, 466 U.S. at 698; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).

### 2. Federal Review of State Court Decision

Petitioner raised this claim as Ground 1 in his Rule 3.850 motion (Ex. O at 5–6). In the state circuit court's written decision denying the motion, the court correctly cited <u>Strickland</u> as setting forth the applicable legal standard (Ex. O at 107). The court adjudicated the claim as follows:

Defendant alleges that counsel was ineffective for failing to object to the jury instruction on stealthy entry.  The instruction tells the jury that they may infer felonious intent if they find that the defendant entered the residence in a stealthy manner.  Defendant contends that jury instruction was objectionable because there was insufficient evidence of stealth.  Defendant is incorrect.  There was evidence at trial that Defendant entered the completely dark dwelling at four in the morning, no car was in the driveway, the motion light was not working on this particular house, and Defendant entered the residence from the side window.  *Exh 2 - Jury Trial pp. 20–22, 32–34, 40–41, 53–55*.  This was enough evidence to support the stealthy entry instruction, and counsel was not deficient for failing to object.  *See Oviedo v. State*, 879 So. 2d 682, 684 (Fla. 4th DCA 2004); *see also Baker v. State*, 622 So. 2d 1333, 1336 (Fla. 1st DCA 1993). This claim is denied.

(Ex. O at 106–07).  The First DCA affirmed the decision (Ex. R).

This court must defer to the state court's determination of any state law issues.  *See* Missouri v. Hunter, 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983); Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005) ("A state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *see also* Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L. Ed. 2d 508 (1975) ("State courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law) (citations and footnote omitted); Cargill v. Turpin, 120 F.3d 1366, 1381 (11th Cir. 1997) ("We are not at liberty to challenge [a] state court determination of state law."); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983).  Here, the state circuit court, in a decision summarily affirmed by the First DCA, rejected the state-law underpinnings of Petitioner's ineffective assistance of counsel claim by determining that the jury was, as a matter of state law, properly given the "stealthy entry" instruction.  This federal habeas court is bound by the state courts' determination that the challenged jury instruction was proper.

In light of the determination that the "stealthy entry" jury instruction was proper, defense counsel's failure to object to it was not deficient.  Further, the state court's determination that the jury instruction was proper precludes a finding of prejudice resulting from counsel's failure to object, because Petitioner cannot establish a reasonable probability the trial court would have sustained counsel's objection.

Petitioner failed to demonstrate that the state court's adjudication of Ground One was based upon an unreasonable determination of the facts, contrary to <u>Strickland</u>, or an unreasonable application of <u>Strickland</u>.  Therefore, he is not entitled to federal habeas relief on this claim.

B.      <u>Ground Two: "Ineffective assistance of counsel for failing to investigate and depose defense witnesses in violation [sic] U.S.C.A. Const. Amend. 6."</u>

Petitioner alleges defense counsel failed to properly investigate and depose two defense witnesses, Robert Carroll and Harvey Hagins, prior to presenting their testimony at trial (doc. 1 at 6; doc. 13 at 14–20).  He alleges the testimony of both witnesses was partly inconsistent with his testimony (*id.*).  Petitioner contends if counsel had properly investigated, there is a reasonable probability counsel would not have presented their testimony, and Petitioner would not have testified "to try to set the record straight about what actually happen [sic] that night," which created inconsistency in the defense's evidence (doc. 13 at 17, 20).  Petitioner asserts he presented this claim in his Rule 3.850 motion (*id.* at 7).

Respondent contends the state court's adjudication of this claim was not an unreasonable application of Supreme Court precedent (doc. 12 at 12–14).

1.      Clearly Established Federal Law

The <u>Strickland</u> standard set forth *supra* governs this claim.

2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground 2 in his Rule 3.850 motion (Ex. O at 6).  The state circuit court adjudicated the claim as follows:

> Defendant contends that counsel was ineffective for failing to depose or investigate the testimony of two witnesses prior to calling them to testify at trial.  He claims that the witnesses gave testimony that was inconsistent with his own, hurting his credibility, and had counsel prior investigated she would have opted not to call the witnesses at trial.

> Defendant cannot show prejudice, as there is not a reasonable probability that the outcome of the trial would have been different without the witnesses' testimony.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The testimony of Defendant's friends did differ with his own, relating to their use of drugs.  However, their testimony did not contradict, and in fact helped establish, his theory that he had a bad reaction to drugs he had taken and entered the home seeking help for a medical emergency.  *Exh. 2 - pp. 114–24, 133–40, 163–75.*  Moreover, Defendant's

credibility with the jury was already severely compromised because he admitted to being convicted of a felony and of a crime involving dishonesty, and his convictions were fully aired before the jury on cross examination. *Exh. 2 - pp. 163–64, 176–79.* Further, the prosecution elicited testimony from Defendant that his testimony on direct examination, that he had been drug free for four years, was not accurate. In fact, Defendant had been in lock-down at Marion C.I. for unauthorized use of drugs the year prior to the alleged crime. *Exh. 2 - pp. 175–76.* Accordingly, this claim is denied.

(Ex. O at 107–08).

The defense theory presented by Petitioner's counsel at trial was that Petitioner broke into the victim's home not because he intended to commit a crime therein, but to obtain emergency medical attention for his drug-induced condition (*see* Ex. E). In pursuit of this defense, counsel presented testimony from Robert Carroll, Jr. and Harvey Hagins. Mr. Carroll testified he picked up Petitioner at the bus station on November 21, 2006 (*id.* at 119). He testified Petitioner had agreed to help him prepare food for Thanksgiving, so they went to the grocery store, ate at a seafood restaurant, picked up Mr. Hagins, and then proceeded to Mr. Carroll's home (*id.* at 119–20). Mr. Carroll testified they began watching movies and may have drank beer (*id.* at 120). He testified that Petitioner began acting strangely:

A. Well, he stood up. And I asked him did he have to go to the rest room, because I think he rubbed his stomach or something to that effect. He said no. And he started, I wouldn't say running but moving around hastily or erratically in the house. And he tried to go out the back door. And I said you don't need to go out in the backyard.

And eventually he went out the front door. And I just sat there and Harvey sat there, and we continued to watch the television. I don't know how long later he came back and said let him in. I let him in. He sat down for maybe five minutes, maybe ten. I don't know how long it was. He got up and started again.

I said, okay, it's time for you to go. Something's wrong with you. Let's go. I'm taking you home. Got up. And he didn't want to get in the car. So Harvey and I went on about our way. I took Harvey home and came back, I don't know, maybe an hour, hour and a half later. No Rod.

Q [by defense counsel]. Okay. Had you seen him do any drugs that night?

A. No, I didn't.

Q.  Okay.  Had you ever seen him act like this before?

A.  Never.  I mean, we'd joke around but no.  No, no.  The answer to that is no, never seen him act like that before.

Q.  Did you think his behavior was a little bizarre?

A.  I was—yeah, I didn't know what was wrong with him.  I—yeah, I thought it was bizarre.  I'll just leave it at that.  Thought it was bizarre.

(Ex. E at 121–22).  On cross-examination, Mr. Carroll reiterated that he did not see Petitioner take any drugs, and he did not know what caused Petitioner's behavior (*id.* at 130–31).

Harvey Hagins testified he was with Petitioner and Mr. Carroll the night before Thanksgiving (Ex. E at 135).  He testified they were watching a movie, when Petitioner "let out a real bad—real loud scream" (*id.*).  He continued:

He proceeded to run around the—around Mr. Carroll's living room.  You know, I said, wow, what's going on with him.  Bob goes, I don't know either.  Man, I don't know.  I don't know.  And he said, Rod, stop.  Why don't you calm down.  He wouldn't stop, okay?

He tried to go out the back door, but Mr. Carroll said that door was locked.  Can't go out that door, okay?  So he tried to go out the front door.  He said you can't go out that door.  That door is locked also.  He tried to go out the garage door.  That door was locked also.
. . . .
I'm like, Rod, calm down.  Stop man, stop, you know.  He wouldn't listen.  He kept running around the house screaming.  Mr. Carroll said, Harvey, I'm letting him out right now, okay?
. . . .
I said, okay, man. . . . He let Mr. Mashburn out.  I'll say about a half hour, 15 minutes to a half hour later, comes back in the door—knocks on the door.  Bob, can I come back in.  He says no.  . . . .

He said, Bob, I need to come back in.  He said, okay, are you going to be—are you calmed down and behave yourself this time.  He goes, yeah, I'm fine this time.  I'm fine.
. . . .
He lets him back in.  Five minutes later, he goes off again.  Mr. Carroll says, well, that's it.  We're out of here.  We're going right now.  We're leaving.

Q [by defense counsel].   So Mr. Mashburn started screaming and pacing again?

A.  Yes, yes.

Q.  Okay.  Did you have any idea what was wrong with Mr. Mashburn?

A.  I—

Q.  Did you have any suspicions?

A.  Yeah.

Q.  Had you seen Mr. Mashburn do anything?

A.  No, I hadn't seen him do anything, no, no.  But I had—something was wrong with him.  It wasn't normal.  What I know, either he was drinking or he was on drugs.  I didn't know.  But it wasn't normal.

(Ex. E at 136–39).  Mr. Hagins admitted he was drinking beer that night (*id.* at 139, 146).  He testified he did not see Petitioner drink alcohol or do any drugs at any time that night (*id.*).  Mr. Hagins described Petitioner's behavior as "bizarre" and stated he had never seen Petitioner act like that (*id.* at 140).

Petitioner's testimony regarding the events of that night was generally the same as the testimony of Mr. Carroll and Mr. Hagins.  He testified Mr. Carroll picked him up at the bus station, they went out to eat and to the grocery store, and then they ended up at Mr. Carroll's house with Mr. Hagins (Ex. E at 165–66).  However, Petitioner stated he and Hagins drank beer, smoked marijuana, and did powder cocaine together at Hagins's house prior to going to Mr. Carroll's house (*id.* at 167).  Petitioner testified his drug of choice was crack cocaine, and he had been an addict for years, but prior to that night he had not done any drugs in almost four years (*id.* at 167).  Petitioner testified he did not experience any negative effects from the drugs while he was at Mr. Hagins's house (*id.* at 168).  He testified Mr. Carroll had given them some of the drugs, and when the three of them went to Mr. Carroll's house, Mr. Carroll offered him some more drugs (*id.*).  Petitioner continued:

And then I guess it just had an effect on my system.  I just started acting crazy.  I thought he had put something in there.  I thought he had put something in it.  And that's when I jumped out and ran out of the house, because it's like I was

hallucinating.  I heard him say, he's fighting it.  He's fighting it good.  And I was like—and then somebody said what did you put in it.  And I thought he said tranquilizer.  That's when I jumped up and left out of the house, because I thought they had put something in the cocaine.

. . . .

Because they had went in the room at first, and then they came out together, and then they presented it [the cocaine] to me.

. . . .

And told me to hit it, yeah.  You hit it.  Hit it, hit it.  You know, kind of like (indicating).  And then I started feeling funny.

. . . .

That's when I knew something was wrong.  And that's when I ran out of the house.  I ran out of the house.  And then I was in a neighborhood I didn't know.  And I had on white clothes.  I was like, somebody is going to put me in jail.  So that's why I came back in the house.  I didn't want to be in the house because I didn't trust them anymore.  So I ran out of the house again.  And so I just said, I've got to get some help.  And so when I ran—

. . . .

I was thinking they're trying to harm me.

. . . .

So I didn't want to be anywhere around—that's why I didn't get in the car.

. . . .

So then I see a house with two angel statues sitting in the front.  I'm a Christian person.  So I said this person got to believe in God.  They'll probably help me.  So I rang the doorbell.  Nobody came.  So I was like—my adrenaline was so high, I was beating on the window and the window broke.  And I was steadily looking back like someone was after me and I stepped in.  That's when he [the homeowner/victim] grabbed me.  And I said, please, please, just call me an ambulance.  And he just told me, just go back out the same way you came in.  And I did and waited on the police to come.  When I saw the police come, I was walking towards the police.

Q [by defense counsel].  Okay.  So you—did you intend to commit a crime in Mr. King's house?

A.  No, ma'am.  I first went to the door to ring the doorbell.  All I wanted to do was get me some help us [sic], because I knew something was wrong.  I knew how I was acting.  And I really feared for my life.

Q.  Okay.  Had you ever had a reaction like that before?

A.  Never.

(Ex. E at 168–70).

On cross-examination, Petitioner repeated that until that night (November 21–22, 2006), he had been drug-free for nearly four years (Ex. E at 175).  The prosecutor then impeached him with evidence that on August 5, 2005, he spent 122 days in "lock-down" in Marion (Correctional Institution) for unauthorized use of drugs (*id.* at 176).  Petitioner admitted he had used drugs once in Marion, and had forgotten about it (*id.*).  The prosecutor also impeached Petitioner's credibility with the fact that he had been previously convicted of eight felonies and a crime involving dishonesty (*id.* at 176–79).  The prosecutor questioned Petitioner about the discrepancy in his testimony and Mr. Carroll's and Mr. Hagins's testimony regarding their use of drugs that night, and Petitioner reiterated that Mr. Carroll and Mr. Hagins partook in the same drugs he did (*id.* at 180–81).  He testified he thought Mr. Carroll and Mr. Hagins had slipped him a "Mickey" (*id.* at 182).

Dr. Josh Simmons testified he treated Petitioner in the emergency room at 5:33 a.m. on November 22, 2006 (Ex. E at 148–49).  He testified Petitioner was in police custody, and the officers reported Petitioner had been tased three times and was combative (*id.* at 149–50, 152).  He testified paramedics reported that Petitioner was acting in an unusual manner (*id.*).  Dr. Simmons testified Petitioner had an elevated heart rate and appeared agitated (*id.* at 149–50).  He testified he performed blood work and a urinalysis to assess the cause of Petitioner's elevated heart rate and altered behavior (*id.* at 150).  Dr. Simmons testified the urinalysis was positive for cocaine and marijuana, and Petitioner's behavior was consistent with someone who was acutely intoxicated with cocaine (*id.* at 150–51, 155).  He testified the tests were negative for hallucinogens such as amphetamines, barbiturates, benzodiazepines, opiates, and PCP (*id.* at 157).  Dr. Simmons testified Petitioner admitted to a history of heavy crack cocaine use (*id.* at 153).  Dr. Simmons testified he diagnosed Petitioner with altered mental status (meaning, he was acting in a manner that was not presumed to be his baseline behavior) and cocaine abuse (*id.* at 151).  He testified he treated Petitioner with Ativan (an antidote to cocaine), intravenous fluids, and sodium bicarbonate (to prevent renal failure) (*id.* at 160).  Petitioner was released from the hospital four hours later (*id.*).

Petitioner failed to show he was prejudiced by counsel's failure to investigate Mr. Carroll's and Mr. Hagins's testimony prior to trial.  Petitioner's defense theory required evidence of the

reason he believed he required immediate medical attention at the time he broke into the victim's home. Although Dr. Simmons provided credible evidence that Petitioner had suffered a drug-induced medical condition which required treatment, the testimony of Mr. Carroll and Mr. Hagins provided evidence of Petitioner's dramatic, almost panicked behavior just prior to breaking into the victim's home. Mr. Carroll and Mr. Hagins were the only persons who could provide this evidence, besides Petitioner; but Petitioner's credibility was at issue in light of his eight prior felony convictions and his prior conviction for a crime involving dishonesty. There is no reasonable probability the jury would have acquitted Petitioner if Mr. Carroll and Mr. Hagins had not testified.

Petitioner failed to demonstrate that the state court's adjudication of Ground Two was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of Strickland. Therefore, he is not entitled to federal habeas relief on this claim.

C.     Ground Three: "Ineffective assistance of counsel for failing to inform Petitioner of possible insanity defense in violation of U.S.C.A. Const. Amend 6 and 14th Const. Amend."

Petitioner alleges defense counsel failed to inform him of an insanity defense and failed to have him psychologically evaluated to determine his sanity at the time of the crime (doc. 1 at 7; doc. 13 at 20–26). He alleges counsel knew that Petitioner was discharged from the hospital with a diagnosis of altered mental status after his arrest (id.). Petitioner contends if counsel had asserted an insanity defense, there is a reasonable probability he would have been acquitted (doc. 13 at 21). Petitioner asserts he presented this claim in his Rule 3.850 motion (doc. 1 at 7).

Respondent contends the state court's adjudication of this claim was not an unreasonable application of Supreme Court precedent (doc. 12 at 14–15).

1.     Clearly Established Federal Law

The Strickland standard set forth supra governs this claim.

2.     Federal Review of State Court Decision

Petitioner raised this claim as Ground 3 of his Rule 3.850 motion (Ex. O at 6–7). The state circuit court adjudicated the claim as follows:

> Defendant claims that counsel was ineffective for not asserting an insanity defense. While acknowledging that voluntary intoxication would not be a defense, Defendant claims that counsel should have asserted the defense of "insanity super-induced by the long and continuing use of intoxicants so as to produce [sic] a

'fixed and settled frenzy or insanity either permanent or intermittent.'" *Gray v. State*, 731 So. 2d 816, 818 (Fla. 1999) (quoting *Cirack v. State*, 201 So. 2d 706, 709 (Fla. 1967)).  The record and Defendant's own motion show that this defense was not available in the instant case.  Defendant admits in his motion that he was acutely intoxicated, and the testimony of Dr. Simmons bears out Defendant's assertion.  *Exh. 2 – 148–51.*  Acute cocaine intoxication is legally inconsistent with the defense Defendant claims counsel should have asserted, as the defense requires insanity brought about by *chronic* drug abuse.  *See Gray v. State*, 731 So. 2d at 818. Moreover, Defendant's testimony was that he had been drug free for at least one year prior to the night of this incident.  *Exh. 2 – pg. 167, pp. 175–76.*  Consequently, counsel's performance was not deficient under *Strickland*, and ths claim is denied.

(Ex. O at 108).

Because this court must defer to the state court's determination of any state law issues, the court defers to the court's determination that in Florida, a defense of insanity based upon drug use requires insanity brought about by <u>chronic</u> drug abuse, and acute drug intoxication does not meet this requirement.  Additionally, the court defers to the state court's determination that the trial and post-conviction record did not support an insanity defense based upon chronic drug abuse.

Further, Petitioner has failed to show deficient performance or prejudice with regard to defense counsel's failure to investigate such a defense.  Concerning what constitutes reasonable investigation, "counsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly."  <u>Chandler</u>, 218 F.3d. at 1318 (citing <u>Strickland</u>, 466 U.S. at 690–91).  In this context, "evidence of a petitioner's statements and acts in dealing with counsel is highly relevant to ineffective assistance claims."  *Id.* (citing <u>Strickland</u>, 466 U.S. at 691).  "Once we conclude that declining to investigate further was a reasonable act, we do not look to see what a further investigation would have produced."  <u>Rogers</u>, 13 F.3d at 388.

Here, the defense theory pursued by Petitioner's counsel, that Petitioner broke into the victim's home not with intent to commit a crime therein but to obtain emergency medical attention for his drug-induced condition, was reasonable and a more viable defense than insanity brought about by chronic drug use.  Petitioner's medical records, which indicated acute cocaine intoxication, and his own statement that he had been drug free for one year prior to the burglary, did not suggest

he was suffering from insanity induced by <u>chronic</u> drug use at the time he broke into the victim's home.   Therefore, counsel's failure to investigate an insanity defense was not deficient, and Petitioner failed to show a reasonable probability that counsel's investigating an insanity defense would have resulted in sufficient evidence to support such a defense.

 Petitioner failed to demonstrate that the state court's adjudication of Ground Three was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of <u>Strickland</u>.   Therefore, he is not entitled to federal habeas relief on this claim.

 D.  <u>Ground Four:  "Ineffective assistance of counsel for failing to inform Petitioner of a conflict of interest with the prosecuting attorney in violation of U.S.C.A. Const. Amend. 6."</u>

 Petitioner alleges prior to Attorney Robin Lotane's appearing as his counsel, she was assigned to his case as the prosecuting attorney (doc. 1 at 7; doc. 13 at 26–32).   He alleges the docket reflects that Assistant State Attorney Robin Lotane was assigned to his case on December 18, 2006 (*see* doc. 13 at 28; *see also* doc. 12, Ex. A).   The next docket entry, dated December 21, 2006, reflects that Attorney Mike Bauer was assigned, and the charging document was filed (*id.*). Petitioner alleges Attorney Lotane's failure to inform him that she had a conflict with Attorney Bauer was deficient performance (doc. 13 at 26).   He alleges if she had informed him that she and Attorney Bauer had worked together on his case, he would not have allowed her to continue representing him because he would have lacked confidence in her ability to vigorously represent him (*id.* at 26–27, 30).   Petitioner asserts he raised this claim in his Rule 3.850 motion (*id.*).

 Respondent contends this claim is unexhausted (doc. 12 at 15–22).   Respondent argues the state circuit court initially struck this issue as facially insufficient with leave to amend, and after Petitioner amended the claim, the court denied it as legally insufficient (*id.*).   Respondent contends because Petitioner failed to properly present the issue to the state court, the claim is procedurally defaulted (*id.*).   Respondent further contends that even if the federal habeas court could consider the claim, it is without merit (*id.*).

 Petitioner raised this claim as Ground 4 in his Rule 3.850 motion (Ex. O at 7).   The state circuit court determined that Ground 4 was legally insufficient (*id.* at 99).   Therefore, in accordance with <u>Spera v. State</u>, 971 So. 2d 754 (Fla. 2007) and <u>Nelson v. State</u>, 977 So. 2d 710 (Fla. 1st DCA

2008), the court ordered Ground 4 stricken with leave to amend (*id.*).[7]  Petitioner amended Ground 4 by the court-ordered deadline (*id.* at 101–05).  The state court denied the claim as follows:

> Defendant claims that counsel had a conflict of interest, which was so egregious that he is entitled to a new trial.  Defendant asserts that defense counsel was originally assigned to prosecute his case when she was an Assistant State Attorney.  Defendant's motion is legally insufficient.  "When ineffective assistance of counsel is first asserted in a postconviction motion, the defendant must show that the conflict impaired the performance of the defense lawyer."  *Lee v. State*, 690 So. 2d 664, 669 (Fla. 1st DCA 1997) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)).  Defendant alleges no impaired performance of counsel, stemming from the conflict of interest.  He simply asserts that there was a conflict of interest.
>
> In accordance with *Spera v. State*, 971 So. 2d 754 (Fla. 2007), the Court gave Defendant an opportunity to amend his legally insufficient claim.  *Exh. 3 – Order Striking Ground 4 of Motion for Postconviction Relief.*  Defendant's amended motion is still legally insufficient, and the Court finds additional leave to amend is unwarranted.  Accordingly, this claim is denied as legally insufficient.

(Ex. O at 108–09).

The state circuit court's denial of the claim as legally insufficient, because Petitioner simply asserted a conflict of interest with no allegations of impaired performance of counsel stemming from the conflict of interest, constituted an adjudication on the merits.  In disposing of the claim, the state court considered the sufficiency of the claim, focusing on the factors for determining whether the conflict of interest claim was sufficient to warrant relief under federal law.  The undersigned therefore concludes the state court's disposition was an adjudication on the merits, and Petitioner's

---

[7] In Nelson, the First DCA described and further clarified the procedure articulated in Spera:

> The procedure articulated in *Spera* allows a defendant an opportunity to amend facially insufficient postconviction claims unless the claims cannot be corrected.  *See id.* at 755, 761; *see also Prevost v. State*, 972 So. 2d 274 (Fla. 1st DCA 2008) (holding that *Spera* allows the defendant one opportunity to cure the deficient claims within 30 days, and if no amendment is filed within the allowed time, claims may be denied with prejudice).  *Spera*'s procedure applies uniformly to all insufficiently pled postconviction claims whether determined to be legally or facially *insufficient*.  *Spera*, 971 So. 2d at 761. . . . Although a trial court in its discretion may grant more than one opportunity to amend an insufficient claim, *Spera* does not mandate repeated opportunities. . . .
>
> Finally, based upon *Spera* and *Nelson v. State*, 875 So. 2d 579, 584 (Fla. 2004), once the window of opportunity to amend expires and the defendant is unable or unwilling to cure the deficiency, the insufficient claim may be denied *with prejudice*.

Nelson, 977 So. 2d at 711.

claim is not procedurally barred or otherwise unexhausted.  *See* Borden v. Allen, 646 F.3d 785, 808–16 (11th Cir. 2011) (rejecting district court's conclusion that petitioner's ineffective assistance of counsel claims were procedurally barred where state court ruled that petitioner's vague assertions and unsupported conclusions were insufficient to withstand summary dismissal because they failed to contain the required specificity and full disclosure of the factual basis, and holding that state court's disposition was an adjudication on the merits; therefore, review of state court decision under deferential standard of AEDPA was appropriate); *see also, e.g.*, Gaedtke v. Sec'y, Dep't of Corr., 369 F. App'x 12, 17 n.2 (11th Cir. 2010) (unpublished).

      1.     Clearly Established Federal law

      The clearly established federal standard for evaluating a claim of ineffective assistance of counsel is set forth *supra*.  However, there is a limited presumption of prejudice where counsel has an actual conflict of interest.  Strickland, 466 U.S. at 691 (citing Cuyler v. Sullivan, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980)).  This presumption, which requires automatic reversal, applies only where an attorney is forced to represent co-defendants over his or her own objection, unless the court has found no conflict.  Mickens v. Taylor, 535 U.S. 162, 167–68, 122 S. Ct. 1237, 1241–42, 152 L. Ed. 2d 291 (2002) (discussing Holloway v. Arkansas, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978)).  The Mickens Court noted that while the Courts of Appeals had "unblinkingly" applied Sullivan to all kinds of purported ethical conflicts:  "[T]he language of Sullivan itself does not clearly establish, or indeed even support, such expansive application. '[U]ntil,' it said, 'a defendant shows that his counsel *actively represented* conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.'"  Mickens, 535 U.S. at 175 (quoting Sullivan with added emphasis, other citations omitted).  Thus, the Eleventh Circuit held that Supreme Court precedent does <u>not</u> clearly establish that the Sullivan rule of presumed prejudice applies in other conflict situations, that is, outside concurrent, multiple representation circumstances.  *See* Schwab v. Crosby, 451 F.3d 1308, 1324–25, 1327–28 (11th Cir. 2006).  In conflict situations where prejudice is not presumed, a petitioner must demonstrate that an adverse effect on counsel's performance flowed from the conflict of interest.  *See* Hunter v. Sec'y Dep't of Corr., 395 F.3d 1196, 1201–02 (11th Cir. 2005); Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1357–58 (11th Cir. 2005).

2.      Federal Review of State Court Decision

There is no evidence that at any time during Attorney Lotane's representation of Petitioner she was also employed with the State Attorney's Office.  Therefore, Petitioner has not shown that Attorney Lotane actively represented inconsistent interests.  Petitioner is thus not entitled to a presumption of prejudice under Sullivan.  Further, Petitioner failed to demonstrate that Attorney Lotane's position as a former assistant state attorney had any adverse effect on her performance in his case.  Petitioner has correspondingly failed to demonstrate that state court's denial of his conflict of interest claim was contrary to or an unreasonable application of clearly established federal law. Therefore, he is not entitled to habeas relief on Ground Four.

E.      Ground Five: "Petitioner claims fundamental error and 6th and 14th Const. Amend. violations U.S.C.A. where Petitioner is being unlawfully detained, and the charging information is fundamentally defective and wholly failed to charge a crime against Petitioner."

Petitioner alleges the charging document was fundamentally defective because it failed to name him as the person or perpetrator within the body of the charge, as required by Rule 3.140(d)(2) of the Florida Rules of Criminal Procedure (doc. 1 at 9; doc. 13 at 32–38).  He contends the failure to name him in the body of the charge deprived the trial court of personal jurisdiction to try him for the crime (id.).  Petitioner alleges he raised this claim in his Rule 3.850 motion and a state habeas petition (id.).

Respondent contends this claim presents purely a question of state law and is thus not cognizable in federal habeas (doc. 12 at 22–24).

The federal habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Thus, federal habeas relief is available to correct only constitutional injury.  28 U.S.C. § 2254(a); Swarthout v. Cooke, 562 U.S. 216, 131 S. Ct. 859, 861, 178 L. Ed. 2d 732 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.") (internal quotations and citations omitted); Estelle v. McGuire, 502 U.S. 62, 67–68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (holding that errors that do not infringe upon a defendant's constitutional rights provide no basis for

federal habeas corpus relief and stating that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); Wainwright v. Goode, 464 U.S. 78, 84, 104 S. Ct. 378, 78 L. Ed. 2d 187 (1983); Barclay v. Florida, 463 U.S. 939, 958–59, 103 S. Ct. 3418, 77 L. Ed. 2d 1134 (1983) ("Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted).   "The writ of habeas corpus was not enacted to enforce State-created rights."   Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000) (citation and quotation marks omitted); Tejada v. Dugger, 941 F.2d 1551, 1560 (11th Cir. 1991) ("Questions of state law [and procedure] rarely raise issues of federal constitutional significance, because '[a] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'") (quoting Carrizales, 699 F.2d at 1053).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988).

A state court's jurisdiction, based upon the charging document's alleged failure to comply with state constitutional provisions, statutes and procedural rules, is a matter of state law that is not properly considered on federal habeas review.  *See* Wright v. Angelone, 151 F.3d 151, 157–58 (4th Cir. 1998) (state law jurisdiction is purely a matter of state law, therefore, state court's determination of state court jurisdiction is binding on federal court); Chandler v. Armontrout, 940 F.2d 363, 366 (8th Cir. 1991) ("The adequacy of an information is primarily a question of state law and we are bound by a state court's conclusion respecting jurisdiction . . . . This determination of jurisdiction is binding on this [federal] court."); Johnson v. Trickey, 882 F.2d 316, 320 (8th Cir. 1989) (adequacy of information is question of state law binding on federal courts); United States ex rel. Roche v. Scully, 739 F.2d 739, 741 (2d Cir. 1984) (stating that "no federal court to our knowledge has ever granted a writ where a state court's asserted lack of jurisdiction resulted solely from the provisions of state law") (internal quotation marks omitted); Wills v. Egeler, 532 F.2d 1058, 1059 (6th Cir. 1976) (holding that a "[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary.").

Petitioner's claim that the body of the charging document failed to name him as the perpetrator and thus deprived the state court of jurisdiction, is purely a matter of state law. *See, e.g.*, Townley v. Crews, No. 3:12cv484/RV/EMT, 2014 WL 1246132, at *3 (N.D. Fla. Mar. 25, 2014) (petitioner's claim that the charging document was not based upon testimony received by the prosecutor under oath from a material witness to the offense, as required by the Florida Constitution, Florida Statutes, and the Florida Rules of Criminal Procedure, was purely a matter of state law and thus not cognizable in federal habeas); Stupar v. Crews, No. 3:12cv391/LAC/CJK, 2014 WL 37681, at *28 (N.D. Fla. Jan. 6, 2014) (unpublished) (petitioner's claim that the amended information charging him with felony DUI and the Affidavit of Violation of Probation charging him with violating his probation failed to comply with the requirements of Rule 3.140 of the Florida Rules of Criminal Procedure, presents a purely state law issue and does not provide a basis to grant federal habeas relief); Wright v. Crews, No. 4:11cv4/RS/CAS, 2013 WL 5658328, at *12 (N.D. Fla. Oct. 16, 2013) (unpublished) (petitioner's claim that trial court lacked jurisdiction because charging document failed to comply with requirements of Florida Constitution and criminal procedural rules, including Rule 3.140, presented issue of purely state law that is not cognizable in federal habeas review); Watson v. Buss, No. 4:08cv428/SPM/EMT, 2011 WL 4102776, at *12 (N.D. Fla. Mar. 15, 2011) (unpublished) (petitioner's contention that the charging document was defective because it failed to satisfy Rule 3.140(g) and, therefore, deprived the trial court of jurisdiction, presents purely an issue of state law), *Report and Recommendation Adopted by* 2011 WL 4090681 (N.D. Fla. Sept. 14, 2011) (unpublished).  Petitioner's labeling his claim as one of constitutional dimension does not transform it into one.  Because Petitioner's claim presents only a violation of state law, federal habeas relief is unavailable.

> F.      Ground Six:  "Petitioner claims fundamental error and violation of 6th and 14th Const. Amend. U.S.C.A. where the state failed to prove beyond a reasonable doubt Petitioner's intent to commit theft or some other offense in the charging information."

Petitioner contends there was insufficient evidence to support his conviction (doc. 1 at 10; doc. 13 at 39–47).  He alleges he broke into the victim's home only to seek emergency medical attention for an adverse reaction he was having to drugs which he believed had been "laced" with a tranquilizer (*id.*).  He alleges he did not take anything from the victim's home, and he did not commit any crime other than simple trespass (doc. 1 at 11).  He contends the evidence demonstrated

he was under duress and did not intend to commit a crime (*id.*).  Petitioner asserts he presented this issue on direct appeal of his conviction (*id.*).

Respondent contends the state court's denial of defense counsel's motion for judgment of acquittal ("JOA") was not an unreasonable application of federal law (doc. 12 at 24–29).

Respondent did not affirmatively assert an exhaustion defense; however, the State did not waive it either.  The federal habeas statute provides, "A State is not deemed to have waived the exhaustion requirement . . . unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3).  Here, Respondent did not concede that Petitioner exhausted the federal nature of his claim; nor did Respondent expressly indicate its intent to waive the exhaustion defense. Further, the State expressly preserved its procedural defense in the opening paragraph of its answer to the habeas petition:

> Respondent presents procedural issues related to the Petition and as to the issue on those procedural issues, Respondent awaits ruling on those procedural arguments before addressing the merits of the Petition. . . . **However, Respondent asserts all available procedural bars.**

(doc. 12 at 1) (emphasis in original).

After the enactment of the AEDPA, whether the State's failure to raise a procedural bar defense waives it depends on the basis of the defense.  If the procedural bar defense arises from the petitioner's failure to raise the federal claim at all and thereby exhaust state remedies, that defense cannot be implicitly waived by the State's failure to assert it.  28 U.S.C. § 2254(b)(3); Smith v. Sec'y, Dep't of Corr., 572 F.3d 1327, 1339–40 (11th Cir. 2009) (citing McNair, 416 F.3d at 1306). If, on the other hand, the petitioner did raise the claim in the state courts but not at the time or in the manner required by state procedural rules, the resulting procedural bar defense may be waived by the State's failure to assert it.  *See* Smith, 572 F.3d at 1340; McNair, 416 F.3d at 1306 (a procedural bar that arises from the failure to bring a claim in state court "is to be distinguished from one that arises, not because of a failure to exhaust, but rather because the state court will not hear the claim due to a state procedural bar"); *see also* § 2254(b)(3) (by implication).

Unfortunately for Petitioner, the procedural bar defense arises from his failure to raise the federal nature of his sufficiency of the evidence claim in the state courts.  Therefore, the defense is not implicitly waived by Respondent's failure to assert it.  The state court record demonstrates that

in Petitioner's brief on direct appeal of his conviction, he argued the trial court erred by denying his motion for JOA because the evidence presented by the State was insufficient to establish the "intent" element of the offense, *i.e.*, that Petitioner entered the victim's home with an intent to commit an offense therein (Ex. G at 16–20). Petitioner's appellate brief framed his claim of trial court error in terms of state law without making any reference to federal law, and in the body of his argument he made no reference to the United States Constitution or federal law, and he cited no federal cases. He argued Florida law only. Nothing in Petitioner's brief put the state court on notice that the issue was being presented as a federal constitutional claim. Therefore, the undersigned concludes Petitioner's claim of trial court error with respect to the denial of the motion for JOA was not fairly presented to the state court as a federal constitutional claim and is thus unexhausted. *See, e.g.*, Ramos v. Sec'y, Dep't of Corr., 441 F. App'x 689, 697 (11th Cir. 2011) (unpublished) (petitioner's federal sufficiency of evidence claim was not exhausted where petitioner made only passing reference to federal constitutional right to due process in arguing that trial court improperly denied motion for judgment of acquittal because State failed to sufficiently prove premeditation element of murder); Pearson v. Sec'y, Dep't of Corr., 273 F. App'x 847, 850 (11th Cir. 2008) (unpublished) (petitioner's federal sufficiency of evidence claim was not exhausted where petitioner cited exclusively to Florida cases in state court and addressed Florida law in all of his substantive arguments, even though Florida courts assess sufficiency of evidence under standard identical to federal standard); Cook v. McNeil, 266 F. App'x 843, 845–46 (11th Cir. 2008) (unpublished) (petitioner did not alert the state court to the alleged federal nature of his sufficiency of the evidence claim and therefore failed to exhaust his federal due process claim; even though petitioner moved for judgment of acquittal and although Florida courts assess the sufficiency of the evidence under the standard applied in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 2798, 61 L. Ed. 2d 560 (1979), petitioner cited exclusively to the state cases and all of his substantive arguments addressed Florida law; "the tenor of [petitioner's] narrow arguments that challenged the characterization of his knife and the sequence of his actions under the Florida statute did not bring a federal claim about due process to the attention of the state appellate court."). *But see* Mulinix v. Sec'y for Dep't of Corr, 254 F. App'x 763 (11th Cir. 2007) (unpublished) (petitioner's federal sufficiency of evidence

claim was exhausted where petitioner presented identical argument to state and federal courts, and Florida courts' sufficiency of evidence standard was identical to federal standard).[8]

Now, any further attempt to exhaust the claim in the state courts would be futile, because Petitioner's claim would be procedurally barred under Florida law.  *See* Smith v. State, 445 So. 2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."); *see also* Rodriquez v. State, 919 So. 2d 1252, 1262 n.7 (Fla. 2005) (issues were procedurally barred because they should have been, but were not, raised on direct appeal).

Petitioner may not assert ineffective assistance of appellate counsel ("IAAC") as cause for the failure to exhaust, because to serve as cause for purposes of a procedural default analysis, the issue of ineffective assistance must first be presented as an independent state claim and exhausted in the state courts.  Murray, 477 U.S. at 488; Orazio v. Dugger, 876 F.2d 1508 (11th Cir. 1989).  In Florida, a claim of IAAC is actionable in a petition for writ of habeas corpus filed in the appellate court to which the appeal was taken.  *See* Fla. R. App. P. 9.141(d); Davis v. State, 875 So. 2d 359, 372 (Fla. 2003).  Here, Petitioner filed a habeas petition alleging IAAC, but he did not present a claim based upon appellate counsel's failure to present the sufficiency of the evidence claim as a federal due process issue (*see* Ex. U).[9]  Further, Petitioner may not return to state court to present an additional IAAC claim because the limitations period set forth in Rule 9.141(d)(5) of the Florida Rules of Appellate Procedure has expired.  Therefore, any such claim could not serve as cause for the procedural default of his sufficiency of the evidence claim.

Additionally, Petitioner has not alleged the existence of newly discovered evidence showing he is actually innocent of the burglary; therefore, he is not entitled to review of his claim through

---

[8] The undersigned cites unpublished opinions of the Eleventh Circuit only as persuasive authority and recognizes that the opinions are not considered binding precedent.  *See* 11th Cir. R. 36-2.

[9] In his state habeas petition, Petitioner alleged appellate counsel was ineffective for failing to argue the following two issues on direct appeal:  (1) the State was not entitled to rely upon the statutory presumption regarding prima facie evidence of intent, provided in Florida Statutes § 810.07, because in the charging document, the State did not generally allege Petitioner intended to commit an offense in the victim's dwelling; instead, the State specifically alleged Petitioner intended to commit theft; and (2) the trial judge erroneously instructed the jury on the statutory presumption regarding prima facie evidence of intent provided in Florida Statutes § 810.07 (Ex. U).

the "fundamental miscarriage of justice" exception to the procedural bar.  Therefore, Ground Six is procedurally defaulted.

Notwithstanding Petitioner's failure to exhaust, the claim is without merit.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State).  In Johnson v. Alabama, 256 F.3d 1156 (11th Cir. 2001), the Eleventh Circuit addressed the federal due process standard with respect to claims concerning the sufficiency of evidence to sustain a conviction on federal habeas review:

> The question we ask is very limited:  whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the petitioner guilty beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 313, 99 S. Ct. 2781, 2785, 61 L. Ed. 2d 560 (1979); *Martin v. Alabama*, 730 F.2d 721, 724 (11th Cir. 1984).  Although each element of the offense must be established beyond a reasonable doubt, *see Bishop v. Kelso*, 914 F.2d 1468, 1470 (11th Cir. 1990) (citing *Jackson*, 443 U.S. at 316, 99 S. Ct. at 2787), the State is not required to rule out every hypothesis except that of the guilt of the defendant, *see Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792–93; *Martin*, 730 F.2d at 724.  When the record reflects facts that support conflicting inferences, there is a presumption that the jury resolved those conflicts in favor of the prosecution and against the defendant.  In other words, federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and in weighing the evidence.  *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Wilcox v. Ford*, 813 F.2d 1140, 1146 (11th Cir. 1987).

*Id.* at 1172.

Here, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found Petitioner guilty beyond a reasonable doubt.  To prove the crime of burglary of a dwelling, the State must prove:  (1) Petitioner entered a dwelling owned by or in possession of the victim, (2) at the time of entering the dwelling, Petitioner had the intent to commit an offense in that dwelling, and (3) the dwelling was occupied at the time (*see Ex*. E at 234–35).  *See* Fla. Stat. § 810.02(1)(b)1., (3)(a).  Florida law provides that in a trial on the charge of burglary, proof of the entering of a structure or conveyance at any time stealthily and without consent of the owner or occupant thereof is prima facie evidence of entering with intent to commit an offense.  *See* Fla. Stat. § 810.07.  Choosing a secluded location calculated to avoid discovery may constitute "stealth."  *See* Baker v. State, 622 So. 2d 1333 (Fla. 1st DCA 1993)

Petitioner does not dispute that the evidence was sufficient to satisfy the first and third elements of the crime (*see* Ex. E).  As for the intent element, the State introduced evidence showing that the victim's home was the only house in the neighborhood that did not have working motion detector lights on the outside; whereas the other houses did (*id.* at 21).  The victim's car was in the closed garage and not visible (*id.* at 20).  There were no lights on inside the victim's home except for a television in the victim's bedroom (*id.* at 20–21).  Petitioner entered the victim's home by breaking a window in a bedroom other than the bedroom where the television was on (*id.* at 21–22).  The victim testified that upon entering the room where Petitioner had broken in, Petitioner "came towards me" and the two struggled, with the victim eventually placing Petitioner in a choke hold (*id.* at 23).  The victim told Petitioner to leave, and Petitioner did, but he then re-entered the home (*id.* at 25, 34).  Petitioner went into the victim's kitchen and removed golf clubs from a golf bag in the corner, which reasonably suggests he intended to hurt the victim, or steal one or more of the golf clubs, or both (*id.* at 25).  The victim testified that it was only after Petitioner cut his back on the broken glass, struggled with the victim, left the house, and re-entered that Petitioner asked the victim to call 911 (*id.* at 24–26).  From this evidence, a reasonable jury could infer that Petitioner did not initially choose a house with lights on, but instead broke into a house that appeared to be dark and unoccupied.  Further, after being told to leave the victim's house, Petitioner did not go to another house for medical attention; instead, he re-entered the victim's house, went to the kitchen, and removed golf clubs from a golf bag.

Viewing this evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that at the time Petitioner entered the victim's home, he intended to commit an offense in that dwelling.  Therefore, under the federal due process standard, the evidence was sufficient to support Petitioner's burglary conviction.

G.    Ground Seven:  "Ineffective assistance of counsel for failing to be present during case management when Petitioner was offered a plea of five years which he declined.  6th Const. Amend. Violation U.S.C.A."

Petitioner alleges his trial counsel, Attorney Frank Sheffield, was absent during a case management conference when the State made a plea offer of five years to a reduced charge of resisting arrest with violence, and was thus unable to advise him on whether to accept the offer (doc. 1 at 12; doc. 13 at 61–74).  Petitioner additionally alleges that after he declined that plea offer "the

offer was never presented again to his new defense counsel [to] whom Attorney Sheffield passed the case" (*id*. at 72).  Petitioner states this is the first time he has ever presented this claim (doc. 1 at 12).

Respondent asserts an exhaustion defense based upon Petitioner's failure to present this claim in state court (doc. 12 at 29–30).  Respondent contends Petitioner failed to establish cause for the procedural default (*id.*).  Therefore, he is not entitled to federal review of the merits of the claim (*id.*).

Petitioner concedes he did not present this claim to the state courts (doc. 1 at 12; doc. 13 at 62–63).  He contends he satisfies the "cause and prejudice" exception, however, because he did not have counsel in the post-conviction proceeding and was thus unable to articulate his claim (doc. 13 at 64).  Petitioner also contends he is entitled to federal review through the "fundamental miscarriage of justice" exception for two reasons:  (1) the complete absence of counsel at a critical stage is fundamental error warranting reversal, and (2) the constitutional right to counsel during plea bargaining was not recognized until the Supreme Court decided Lafler v. Cooper, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012), which was after he could have presented the claim in his Rule 3.850 motion (*id.* at 65–74).

In Coleman v. Thompson, the Supreme Court held that because there is no constitutional right to the appointment of counsel on collateral review, an attorney's errors in a post-conviction collateral proceeding do not constitute cause to excuse a procedural default.  501 U.S. at 753–54.  The Court subsequently created a narrow exception to this rule in Martinez v. Ryan, — U.S. —, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012):

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances.  The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial.  The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.  *Cf.* Miller–El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (describing standards for certificates of appealability to issue).

132 S. Ct. at 1318–19.

Here, Petitioner moved the trial court for post-conviction relief pursuant to Fla. R. Crim. P. 3.850, which is Florida's "initial-review collateral proceeding" for purposes of Martinez. *See, e.g.*, Blackmon v. Pippin, No. 3:08cv510/RV/EMT, 2013 WL 6168889, at *5 (N.D. Fla. Nov. 25, 2013) (petitioner's first Rule 3.850 proceeding was the "initial-collateral review proceeding" for purposes of Martinez). He failed to present the specific ineffective assistance of trial counsel claim he now wishes to bring in Ground Seven of his § 2254 petition. Although Florida law does not require that claims of ineffective assistance of trial counsel be initially brought in a Rule 3.850 collateral proceeding, and it permits such claims to be raised on direct appeal, the structure and design of "the Florida procedural framework render[] the bringing of ineffective assistance of trial counsel claims on direct appeal highly unlikely in the typical case." *See* Reddick v. Sec'y, Dep't of Corr., No. 1:10cv213/MMP/GRJ, 2014 WL 1364494, at *4 (N.D. Fla. Apr. 7, 2014) (analyzing issue, citing numerous cases, and ultimately concluding that pursuant to Trevino v. Thaler, — U.S. —, —, 133 S. Ct. 1911, 1918, 185 L. Ed. 2d 1044 (2013), Martinez applies to Florida's procedural framework)[10]; *see also* Fisher v. Sec'y, Florida Dep't of Corr., No. 8:13cv489-T-30TBM, 2013 WL 5739788, at *2 (M.D. Fla. Oct. 22, 2013) ("Where a state requires the petitioner to raise an ineffective assistance of trial counsel claim in a collateral proceeding, such as in the State of Florida, cause can be shown if the state did not appoint counsel to assist in the initial collateral review proceeding.") (footnote omitted).

Florida law provides for the appointment of counsel for a petitioner seeking post-conviction relief under Rule 3.850:

---

[10] In Trevino, the Court considered whether Texas' procedural framework satisfies the fourth Martinez condition. Trevino, 133 S. Ct. at 1916–17. After noting that "Texas does not expressly *require* the defendant to raise a claim of ineffective assistance of trial counsel in an initial *collateral review* proceeding" and permits—but does not require—"the defendant to raise the claim on *direct appeal*," the Court found the fourth condition of Martinez applicable. *Id.* at 1918 (emphases in original). The Court based its decision, in part, on two factors: (1) Texas procedure makes it virtually impossible for appellate counsel to adequately present an ineffective assistance of trial counsel claim on direct review; and (2) were Martinez not to apply, the Texas procedural system would create significant unfairness because "Texas courts in effect have directed defendants to raise claims of ineffective assistance of trial counsel on collateral, rather than on direct, review." *Id.* at 1918–19 (citations omitted). The district court in Reddick made similar observations regarding Florida courts. *See, e.g.*, Reddick, 2014 WL 1364494, at *4 (noting the "rarity of direct appellate review" of ineffective assistance of trial counsel claims in Florida and that such review is discretionary "in that the appellate court can simply decline review in favor of review by post-conviction motion") (citation and internal quotations omitted).

> The court may appoint counsel to represent the defendant under this rule.  The
> factors to be considered by the court in making this determination include:  the
> adversary nature of the proceeding, the complexity of the proceeding, the complexity
> of the claims presented, the defendant's apparent level of intelligence and education,
> the need for an evidentiary hearing, and the need for substantial legal research.

*See* Fla. R. Crim. P. 3.850(f)(7).  This appointment authority is discretionary.  *See* Graham v. State,
372 So. 2d 1363, 1366 (Fla. 1979).

In the instant case, the state court did not appoint counsel for Petitioner in the Rule 3.850
proceeding.  However, Petitioner does not allege, nor does the record show, that at any time during
the six-month period his Rule 3.850 motion was pending in the trial court, he expressed to the state
court a desire to be represented by counsel in the Rule 3.850 proceeding or demonstrated that he
qualified for appointment of counsel at public expense.  Arguably, the state court's failure to appoint
counsel can fairly be attributed to Petitioner himself and therefore does not qualify as an external
factor that impeded or obstructed him in complying with Florida's established post-conviction
procedures.  *See* McCleskey, 499 U.S. at 497 ("For cause to exist, an external impediment, whether
it be governmental interference or the reasonable unavailability of the factual basis for the claim,
must have prevented petitioner from raising the claim."); Martinez, 132 S. Ct. at 1318 ("[O]nly
where a prisoner is impeded or obstructed in complying with the State's established procedures will
a federal habeas court excuse the prisoner from the usual sanction of default.") (citations omitted).

Additionally, Petitioner has not met his burden of demonstrating that the "underlying
ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that . . . the claim
has some merit."  Martinez, 132 S. Ct. at 1318–19.  To show prejudice from ineffective assistance
of counsel where a plea offer has lapsed or been rejected because of counsel's deficient
performance, a defendant must demonstrate a reasonable probability he would have accepted the
earlier plea offer had he been afforded effective assistance of counsel.  Missouri v. Frye, 132 S. Ct.
1399, 1409, 182 L. Ed. 2d 379 (2012).  A defendant must also demonstrate a reasonable probability
the plea would have been entered without the prosecution canceling it or the trial court refusing to
accept it, if they had the authority to exercise that discretion under state law.  *Id*; *see also* Lafler v.
Cooper, — U.S. —, 132 S. Ct. 1376, 1385, 182 L. Ed. 2d 398  (2012) (noting same requirements
and a third, "that the conviction or sentence, or both, under the offer's terms would have been less
severe than under the judgment and sentence that in fact were imposed").

Petitioner has not shown a reasonable probability he would have accepted the State's five-year plea offer had counsel been present at the case management conference and discussed the offer with him that day.  Petitioner makes three somewhat-similar assertions regarding whether he would have accepted the plea offer:  (1) "that had counsel been present, he could have made a decision [regarding whether to accept the offer] based upon [his] attorney's advice and probably [would] not [have] proceeded to trial" (doc. 1 at 12); (2) that "there is a reasonable probability that he would have taken the state's offer of five years" (doc. 13 at 62); and (3) that "had defense counsel been present and given Petitioner the benefit of counsel's profession [sic] advice on this crucial decision, Petitioner would have taken the plea offer of five years" (doc. 13 at 71).  These assertions fail to demonstrate a reasonable probability Petitioner would have accepted the State's plea offer.  *See* Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991) (Petitioner cannot show prejudice simply by asserting in hindsight that he would have accepted a plea agreement had it been properly presented to him); *see also* Johnson v. Duckworth, 793 F.2d 898, 902 n.3 (7th Cir. 1986) (noting that petitioner's statements alone do not establish a reasonable probability that he would have accepted the plea).  Additionally, Petitioner does not allege that he ever expressed a desire or intent to plead guilty—to his counsel, the court, or anyone else—before he was convicted, which weighs against finding it reasonably probable he would have accepted the plea offer had counsel discussed it with him.  *See* Diaz, 930 F.2d at 835 (noting same).

Moreover, Petitioner's assertions are based on a presumption that Attorney Sheffield would have advised Petitioner to accept the plea offer, but nothing in the record indicates that Sheffield would have done so.  Nor does the record indicate whether, at the time of the case management conference at issue, Attorney Sheffield had enough information regarding the facts and evidence of Petitioner's case to make a recommendation as to whether Petitioner should plead guilty or proceed to trial.[11]

---

[11] Petitioner does not indicate the date of the case management conference during which the plea offer was communicated to him in counsel's absence, but the state court record shows that case management conferences were held in Petitioner's case in March, April, August, and September of 2007 (doc. 12, Ex. A at 5–7).  The record also shows that as late as September 13, 2007—or approximately two months before Petitioner's jury trial and nearly ten months after Petitioner's arrest and the filing of formal charges against him, Attorney Sheffield indicated in a motion to continue Petitioner's trial (then scheduled for September 17, 2007) that he "recently acquired [Petitioner's] file from previous counsel," that "discovery is incomplete and depositions have to be taken, and [Petitioner] insists that the case not proceed to trial until discovery is complete" (*id.*, Ex. C at 24; *see also id.*, Ex. A at 4).  These circumstances do not support a

Petitioner has also failed to show, or even argue, a reasonable probability the plea would have been entered without the trial court refusing to accept it, and the court can discern no such probability from the record.  The record establishes that on December 21, 2006—within a month of Petitioner's arrest and long before any of the case management conferences in his case—the State filed the information, which charged Petitioner with burglary of an occupied dwelling, and it filed a "Notice of Intent to Seek Enhanced Penalty Prisoner Releasee Reoffender Punishment" (doc. 12, Ex. C at 26, 40).  In light of the enhancement notice that clearly sets forth the State's intent to seek an enhanced penalty, the circumstances of the burglary offense, and the State's view of the evidence,[12] Petitioner has not demonstrated a reasonable probability that the trial court would have accepted a plea to a reduced charge of resisting arrest with violence or sentenced him to a term of only five-years imprisonment.

Petitioner failed to show he was prejudiced by his counsel's failure to discuss with him at the case management conference the State's five-year plea offer to a reduced charge.  Therefore, he has not demonstrated that the ineffective assistance of trial counsel claim asserted in Ground Seven of his § 2254 petition is "substantial" under Martinez.  Accordingly, he is not entitled to federal review of his claim under the narrow exception announced in Martinez.

V.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing

---

finding that it was "reasonably probable" Petitioner would have accepted the plea offer.

[12] In a motion filed to revoke Petitioner's bond, the State noted:

On November 22, 2006, [Petitioner] was arrested for one (1) count of Burglary of Occupied Dwelling, a second degree felony punishable by up to 15 years in prison.  [He] qualifies as a Prison Releasee Reoffender mandating the maximum punishment since he was just released from prison within three years of this offense.  This arrest stemmed from [Petitioner] breaking into a man's house by smashing out and making entry through a guest bedroom window of the residence while the man was home. There was an ensuing fight between the man and [Petitioner,] and the homeowner retreated by locking himself in his master bedroom and calling the police.

(doc. 12, Ex. C at 52).

required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 17th day of November 2014.

/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**